# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LESLIE COTTO o/b/o**
**JESUS A. MENENDEZ,**

        **Plaintiff,**

-vs-                                                  **Case No. 6:04-CV-1717-Orl-KRS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

## ORDER

This matter came before the Court for consideration without oral argument on the complaint filed by Leslie Cotto seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Jesus A. Menendez, Cotto's deceased husband, for social security benefits. Doc. No. 1.[1] The Commissioner answered the complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration ("SSA"). Doc. No. 9. The matter has been referred to me for disposition pursuant to the consent of the parties. Doc. Nos. 11, 12.

---

[1] The applicable regulations provide that disability benefits may be paid to the surviving spouse of a claimant. 20 C.F.R. § 416.542(b). While there is some evidence in the record that Menendez and Cotto were separated, R. 193, there is no record of divorce. Because Cotto is Menendez's surviving spouse, she has standing to challenge the Commissioner's decision.

**I.      PROCEDURAL BACKGROUND.**

In August 2001,  Menendez applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq*. R. 90-92. In the OASDI application,  Menendez alleged a disability onset date of August 19, 2000. R. 90.  The SSA denied Menendez's application both initially and on reconsideration. R. 64-66, 71-73. Menendez made a timely request for a hearing.  R. 63. Menendez died on December 15, 2002, before the hearing was held.  R.  34.

An Administrative Law Judge ("ALJ") held a hearing on May 19, 2004.  Cotto, who was not represented by counsel, attended the hearing and testified.  Ralph Fernandez, M.D., and Susanna Roche, a vocational expert (VE), also testified.  R. 31-55.

After considering the testimony and the records presented, the ALJ concluded that Menendez was insured under OASDI through the date of his death.  R. 15.  The ALJ concluded that Menendez had not engaged in substantial gainful activity since the alleged onset date of his disability.  R. 22.

The ALJ concluded that the medical evidence showed that Menendez had back pain, moderate to severe hearing loss in the left ear after removal of a cyst (cholesteatoma) in the middle ear, and depression, which were severe impairments. R. 22.  She concluded that these impairments did not meet or equal any impairments listed in the SSA regulations.  *Id.*

The ALJ found that Menendez had the RFC to sit, stand or walk about six hours in an eight-hour workday.  He could lift and carry up to twenty-five pounds frequently and fifty pounds occasionally.  He needed to avoid concentrated exposure to noise.  He could

perform simple, routine, repetitive tasks.  He had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace, but no episodes of decompensation.  Accordingly, the ALJ concluded that Menendez had the ability to perform a limited range of work at a medium level of exertion.  R. 21.

The ALJ noted that the Medical-Vocational Guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt. P., App. 2 , would indicate a finding that Menendez was not disabled. The ALJ also relied on the testimony of the VE, who opined that an individual with Menendez's RFC could perform the jobs of cashier, sales attendant, or dining room attendant, all of which existed in significant numbers in the economy.  Based on the evidence, the ALJ concluded that there were jobs available that Menendez could have performed.  Therefore, she concluded that Menendez was not disabled.  R. 22.

Cotto timely requested review of the ALJ's decision.  R. 10.  On September 24, 2004, the Appeals Council denied the request for review, finding no basis for changing the ALJ's decision.  R. 6-7.  Thereafter, Cotto timely filed a complaint in this Court.  Doc. No. 1.

**II.     JURISDICTION.**

The Commissioner issued a final decision after a hearing with respect to Menendez's application for OASDI.  Therefore, the Court has jurisdiction of this matter under 42 U.S.C. § 405(g).

### III.     STATEMENT OF FACTS.

*A.     Cotto's Testimony and Written Statements by Menendez.*

Menendez was born on July 5, 1969.  R. 35.  He was killed in an automobile accident on December 15, 2002.  R. 34.  He and Cotto had been married six years at the time of his death.  R. 35.

Menendez attended school through the twelfth grade.  R. 36.  He worked as a packaging operator at Warner-Lambert and as a chemical operator at Dupont.  R. 38, 48, 98.  Later, he worked as a chemical operator for Upjohn pharmacy until 2000.  R. 36, 98.  Cotto testified that Menendez was transferred to the position of inspector/guard when he could no longer perform the chemical operator job due to arm pain and depression.  R. 36-37.  He was ultimately placed on short-term disability and later long-term disability.  R. 37, 39.

In papers submitted to the SSA, Menendez indicated that he had difficulty balancing.  R. 97. He also did not have strength in his left arm.  *Id.*  He reported severe depression, weight loss, pain in his back, dizziness and hearing loss.  R. 106.  He could not perform continuous movements with his hands.  He had sleep difficulties, problems with memory and concentration, bad moods, and frequent headaches. He did not participate in social activities.  R. 106, 108-13.  He was unable to drive due to dizziness and disorientation.  R. 110.  He needed help shaving and getting dressed.  R. 109.  He was unable to perform household chores.  R. 110.

Cotto testified that Menendez had problems with his arm.  R. 39, 42.  He had had a cyst removed from his left ear, and he experienced dizziness.  R. 39, 42.  He  was depressed, aggressive and cried all of the time.  R. 40-41.

*B.     Medical Records and Dr. Fernandez's Testimony*.

It appears that Menendez was treated at the Centro Medico Atenicense from August 2000 through June 2001, but the handwritten treatment notes are largely illegible. R. 123-35.

Radiologic tests were performed on Menendez's back and left shoulder in August and November 2000.  R. 136-40.  The shoulder test was normal, but the spine tests revealed degenerative joint disease of the lumbar facet joints and both sacroiliac joints. R. 139.  There was also a loss of normal lordosis consistent with muscle spasm and mild spondylotic changes in the cervical spine.  R. 137.

Cruz Feliciano, a clinical audiologist, conducted tests on Menendez in January 2001.  R. 121-22.  A C.T. scan of the temporal bones was also performed on January 13, 2001.  R. 136.  The results showed moderately severe to mild hearing loss in the left ear, with mild hearing loss in the right ear.  R. 121-22.  Vicente Lopez Hidalgo, M.D., operated and removed a cyst from Menendez's ear in March 2001.  R. 100, 143. His diagnosis was left peripheral vestibular dysfunction affecting Menendez's ability to balance.  R. 143.

Angela Manana de Velazquez, M.D., examined Menendez in September 2001. At that time, Menendez complained of severe left shoulder pain radiating to his left arm with associated weakness of the left arm.  He also reported dizziness, difficulty balancing, low

back pain, left ear pain and tinnitus.  R. 148.  Examination revealed that Menendez had diminished sensation to pinprick in his left arm and some motor deficit in his upper extremities.  R. 146.  Dr. Manana de Velazquez's impression was that Menendez had chronic cervical radiculopathy, and middle ear cholesteatoma, among other things.  R. 154.  She opined that due to his general condition, he was unable to perform work-related physical activities "as described."  *Id*.

Indra Febles Gordian, M.D., a psychiatrist, examined Menendez at the request of the SSA in September 2001.  At that time, Menendez complained of sadness, anxiety, irritability, anger, poor coping skills, and sleep disturbances, among other things.  R. 163.  Upon examination, Dr. Gordian noted that Menendez's memory for recent events was intact, but his memory for remote events was patchy.  He occasionally had lapses of attention that required instructions and questions to be repeated.  R. 165.  Dr. Gordian's impression was that Menendez had a major depressive disorder, single episode, severe.  She indicated that his prognosis was guarded.  R. 166.

On November 17, 2001, physicians reviewed Menendez's records and prepared a functional capacity assessment.  Their opinion was that Menendez could frequently lift fifty pounds, and occasionally lift twenty pounds.  He could sit, stand or walk about six hours in an eight-hour workday.  He should never climb or balance, and could only occasionally stoop, crouch or crawl.  He had limited ability to do handling and fingering.  He should avoid concentrated exposure to noise.  R. 155-61.

On April 29, 2002, Orlando E. Reboredo, Ph.D., prepared a functional capacity assessment based on a review of Menendez's records.  Dr. Reboredo opined that

Menendez would have moderate limitations in his ability to do the following: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. R. 174-77. He also opined that Menendez would have moderate restrictions of activities of daily living, and moderate difficulties in maintaining social functioning and concentration, persistence or pace, but no episodes of decompensation. R. 188.

Treatment notes dated February to July 2001, reflect that Menendez complained of mild dizziness, strong vertigo and unilateral weakness with loss of balance. R. 141-44. Dr. Hidalgo opined on April 19, 2002, that Menendez had peripheral vestibular dysfunction and ear cholesteatoma, with moderate hearing loss, causing unbalance. He stated that the prognosis for these conditions was poor. R. 167.

In May 2002, Evelyn Rodriguez Aja, M.D., a neurologist, evaluated Menendez. At that time, Menendez complained of lumbar and shoulder pain. He also had cramps in his left hand and weakness in his left arm, which made him unable to grab, carry, pick up or move heavy objects. He also reported problems with balance and dizziness. R. 192. Upon examination, Dr. Aja observed that Menendez had good past, recent and immediate memory. R. 193. He showed atrophy in his left arm, with decreased pain and

feeling. *Id*. Dr. Aja also noted light lumbar spasms. R. 194. His gait was normal. R. 197. Her impression was lumbar and left shoulder shredding with light lumbar myositis. R. 194.

Dr. Rodriguez completed a hand function form in which she noted full strength in Menendez's right hand and four of five strength in his left hand. Her opinion was that Menendez had no hand limitations. R. 196.

Ralph Fernandez, Jr., M.D., a orthopedist, reviewed Menendez's records and testified at the ALJ's hearing. R. 43. Dr. Fernandez opined that after the cyst was removed from Menendez's ear, a hearing test was performed that was within acceptable functional limits. R. 44. He noted that Menendez complained of back pain, but the objective medical findings indicated that this was not a severe impairment. R. 44-45. Dr. Fernandez opined that Menendez would have been able do to moderate work, lifting up to fifty pounds occasionally. R. 46.

 C. *Vocational Expert Testimony*.

The ALJ asked the VE to assume the following individual:

> [A]ssume that I have an individual who is 33 years of age. He had the past relevant work as described for the claimant, as well as his education. . . . He could lift 50 pounds occasionally, 25 pounds frequently. Sit, stand or walk for six hours out of an eight-hour day, he's to never climb or balance, can occasionally stoop, crouch and crawl and frequently kneel. He has limited hearing to the extent that he's to avoid activity where any limitation for hearing would prevent him from performing those activities. And he's to avoid concentrated exposure to noise. He can occasionally handle and finger.

-8-

R. 48-50.  The VE opined that this individual could not perform any of Menendez's past relevant work.  R. 50.  However, he could work as a campground attendant, which job existed in significant numbers.  R. 50-51.

The ALJ then asked the VE to assume an individual of Menendez's age, education and relevant work experience with the following limitations:

> [Able to lift] 50 pounds occasionally, 25 pounds frequently.
> Sit, stand and walk for six hours in an eight-hour day.  The
> mental in that he could perform simple, routine, repetitive
> tasks. . . . [H]e's to avoid concentrated exposure to loud
> noise.

R. 48, 51.  The VE opined that this individual could not work as a campground attendant.  R. 51-52.  She opined that the individual could perform the jobs of cashier, sales attendant, and dining room attendant, all of which existed in significant numbers.  R. 52.

## IV.  STANDARD OF REVIEW.

To be entitled to Social Security disability benefits under OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to

be entitled to disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry which must be followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g., McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987) (per curiam).

This Court's review of a final decision by the SSA is limited to determining whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "'must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision.'" *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987)(quoting *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Id.* While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).

**V.   ANALYSIS.**

Cotto contends that the ALJ erred at step-five of the sequential analysis in the following respects: (1) she did not include all of the functional limitations arising from Menendez's mental impairment in her hypothetical questions to the VE; (2) she did not include manipulative limitations in her hypothetical questions to the VE; and (3) she did not inquire how dizziness and problems with balance would effect Menendez's ability to perform the jobs identified by the VE. She also contends that the ALJ did not fully develop the record because she did not obtain other records from Dr. Gordian. I address only the question of how problems with balance would effect Menendez's ability to

-11-

perform the jobs identified by the VE, because I find it to be dispositive. I note that the Commissioner did not address this argument in her memorandum of law.

Dr. Hidalgo, a treating physician, found that Menendez had peripheral vestibular dysfunction that caused problems with balance. Reviewing physicians also opined that Menendez should never climb or balance. While the ALJ stated that she agreed with the functional capacity report completed by the reviewing physicians that limited Menendez to medium work activity, R. 20-21, she did not explain why she did not accept these physicians' conclusion that Menendez should never perform work requiring climbing or balancing.

The ALJ included the limitation on balance in one of the hypothetical questions to the VE. The VE did not indicate that Menendez could perform the jobs of cashier, sales attendant or dining room attendant in response to this hypothetical question. Rather, the VE identified these jobs only in response to a hypothetical question that did not include postural limitations, including limitations on the ability to climb or balance.

Because the ALJ concluded that Menendez could not perform the full range of work at the medium exertional level, she was required to call upon a VE to determine whether there were jobs available that Menendez could have performed in light of his RFC. *See Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). The law required that the ALJ pose a hypothetical question to the VE that included all of the functional limitations arising from Menendez's impairments. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). When, as here, the hypothetical question did not include all of the functional limitations supported by substantial evidence in the record – specifically

limitations arising from Menendez's problems with balance – the ALJ erred by relying upon the answer to the incomplete hypothetical question in determining that jobs were available that Menendez could perform.

Accordingly, remand is required to permit the Commissioner to reassess Menendez's ability to work.  On remand, Cotto may supplement the record with additional treatment records from Dr. Gordian.

## V. CONCLUSION.

For the reasons discussed herein, it is **ORDERED** that the decision of the Commissioner is **REVERSED** and that the matter is **REMANDED** for further proceedings.  The Clerk of Court is directed to issue a judgment reversing the decision of the Commissioner and remanding the case for further proceedings and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 9, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties